# 12-240

In the

## United States Court of Appeals

### For the Second Circuit

UNITED STATES OF AMERICA

v.

STAVROS M. GANIAS,

*Defendant-Appellant.*

ON REHEARING EN BANC

**REPLY BRIEF OF DEFENDANT-APPELLANT STAVROS M. GANIAS**

Stanley A. Twardy, Jr.
Day Pitney LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
(203) 977-7300

Daniel E. Wenner
John W. Cerreta
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0100

# TABLE OF CONTENTS

**Page**

**REPLY** ...............................................................................................................1

I.    The seizure and indefinite retention of Ganias's personal financial records violated the Fourth Amendment .......................................................2

      A.    The overbroad seizure and retention of Ganias's personal files contravenes settled Fourth Amendment doctrine................................2

      B.    The government's arguments do nothing to justify its over-seizure and indefinite retention ...........................................................3

            1.    The government's extended defense of its initial off-site review of electronic evidence is beside the point......................4

            2.    The government's discussion of how "the 2003 warrant satisfied the particularity requirement" is also beside the point...........................................................................................8

            3.    The government's attempt to justify its over-seizure and indefinite retention under existing Fourth Amendment doctrine has no merit..............................................................10

            4.    The government's purported authentication concerns and appeals to prosecutorial convenience provide no basis for permitting indefinite seizures of private papers outside a warrant's scope ......................................................................14

                    a.    The government's desire to streamline its authentication of digital evidence provides no basis for permitting indefinite retention of documents outside of a warrant's scope..........................................15

                    b.    A desire to improve the "usefulness of computer evidence" does not support blanket over-seizures outside the scope of warrants .........................................17

                    c.    The government did not need to over-seize and retain every file on Ganias's computers to comply with discovery obligations .............................................19

                    d.    The government's purported desire to conduct additional searches for responsive files cannot support its conduct in this case......................................20

# TABLE OF CONTENTS
(continued)

                                                                    **Page**

     5.        By the time of the April 2006 warrant, the unconstitutional seizure of Ganias's financial files was already complete ................................................................. 22

II.    The unconstitutional seizure of Ganias's electronic files warrants suppression .............................................................................. 23

    A.    The government cannot claim good-faith reliance on the November 2003 warrant .................................................... 24

    B.    The government cannot avoid suppression by claiming reliance on precedent .......................................................................... 25

        1.        The government effectively concedes that *Davis* does not apply ...................................................................... 25

        2.        Suppression is required even under an expanded good-faith exception ...................................................... 26

    C.    The April 2006 warrant does nothing to cure the government's unconstitutional seizure ................................................. 28

CONCLUSION ................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andresen v. Maryland,*
    427 U.S. 463 (1976)................................................................ 10, 11, 27

*In re Application of Madison,*
    687 F. Supp. 2d 103 (E.D.N.Y. 2009) ..............................................13

*Brady v. Maryland,*
    373 U.S. 83 (1963)................................................................19, 20

*Davis v. United States,*
    131 S. Ct. 2419 (2011)...........................................................25, 26

*Elkins v. United States,*
    364 U.S. 206 (1960)...................................................................26

*Florida v. White,*
    526 U.S. 559 (1999)...................................................................12

*Hawkins v. Steingut,*
    829 F.2d 317 (2d Cir. 1987).........................................................28

*Kremen v. United States,*
    353 U.S. 346 (1957)...................................................................20

*Krimstock v. Kelly,*
    464 F.3d 246 (2d Cir. 2006).....................................................12, 27

*Lorraine v. Markel Am. Ins. Co.,*
    241 F.R.D. 534 (D. Md. 2007).......................................................16

*Marron v. United States,*
    275 U.S. 192 (1927)..................................................................1, 11

*Payton v. New York*,
    445 U.S. 573 (1979)..................................................................................4

*Ramsden v. United States*,
    2 F.3d 322 (9th Cir. 1993)................................................................13, 27

*Riley v. California*,
    134 S. Ct. 2473 (2014).........................................................................15

*Soldal v. Cook Cty.*,
    506 U.S. 56 (1992)..........................................................................10, 11

*Stanford v. Texas*,
    379 U.S. 476 (1969).........................................................................2, 10

*United States v. Aguiar*,
    737 F.3d 251 (2d Cir. 2013)...................................................................25

*United States v. Beusch*,
    596 F.2d 871 (9th Cir. 1979)..................................................................28

*United States v. Burgard*,
    675 F.3d 1029 (7th Cir. 2012).................................................................29

*United States v. Carey*,
    172 F.3d 1268 (10th Cir. 1999)..............................................................8, 14

*United States v. Christie*,
    717 F.3d 1156 (10th Cir. 2013)...............................................................13

*United States v. Comprehensive Drug Testing, Inc.*,
    621 F.3d 1162 (9th Cir. 2010).................................................................10

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013)....................................................................8

*United States v. Ganias*,
    755 F.3d 125 (2d Cir. 2014)............................................................*passim*

-iv-

*United States v. Gorrell*,
 360 F. Supp. 2d 48 (D.D.C. 2004) ................................................................5

*United States v. Hargus*,
 128 F.3d 1358 (10th Cir. 1997) ...............................................................6, 7

*United States v. Hay*,
 231 F.3d 630 (9th Cir. 2000) .....................................................................13

*United States v. Johnston*,
 789 F.3d 934 (9th Cir. 2015) .....................................................................13

*United States v. Lacy*,
 119 F.3d 742 (9th Cir. 1997) .....................................................................13

*United States v. Leon*,
 468 U.S. 897 (1984).............................................................................24, 25

*United States v. Matias*,
 836 F.2d 744 (2d Cir. 1988) ...........................................................1, 11, 24

*United States v. Metter*,
 860 F. Supp. 2d 205 (E.D.N.Y. 2012) .........................................................5

*United States v. Place*,
 462 U.S. 696 (1983)...........................................................................23, 29

*United States v. Potts*,
 586 F.3d 823 (10th Cir. 2009).....................................................................24

*United States v. Reilly*,
 76 F.3d 1271 (2d Cir. 1996) .................................................................29, 30

*United States v. Santarelli*,
 778 F.2d 609 (11th Cir. 1985)...............................................................6, 7, 27

*United States v. Scales*,
 903 F.2d 765 (10th Cir.1990).....................................................................29

*United States v. Sparks*,
711 F.3d 58 (1st Cir. 2013) ............................................................................26

*United States v. Tamura*,
694 F.2d 591 (9th Cir. 1982) .................................................*passim*

*United States v. Thomas*,
757 F.2d 1359 (2d Cir. 1985) ........................................................29

*United States v. Triumph Capital Group*,
211 F.R.D. 31 (D. Conn. 2002) .....................................................28

*United States v. Vayner*,
769 F.3d 125 (2d Cir. 2014) .................................................15, 16

*United States v. Vilar*,
No. S305CR621KMK, 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) .................8

*United States v. Warshak*,
631 F.3d 266 (6th Cir. 2010) ........................................................19

*Weeks v. United States*,
232 U.S. 383 (1914) ............................................................1

*Wolf v. Colorado*,
338 U.S. 25, 47 (1949. ............................................................1

**Rules**

Fed. R. Crim. P. 41 ........................................................13, 22, 27

**Other Authorities**

Executive Office for U.S. Attorneys, *Searching and Seizing*
*Computers and Obtaining Electronic Evidence in Criminal*
*Investigations* (2009) ............................................................14

LaFave, *Search & Seizure: A Treatise*
*on the Fourth Amendment* (5th ed.) ....................................................24

-vi-

## **REPLY**

The government urges this Court to proceed from "first principles," *see* Gov. Br. 18, and so it should. For 225 years, the Fourth Amendment has barred federal agents from using a narrow warrant for particular papers to effect a general and indefinite seizure of all a person's papers. *Marron v. United States*, 275 U.S. 192, 196 (1927). For more than a century, "the normal remedy" for this sort of overbroad seizure "outside the scope of a valid warrant" has been suppression of the over-seized records. *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988); *cf. Weeks v. United States*, 232 U.S. 383, 393 (1914). The government now claims that settled law forbidding indefinite, extra-warrant seizures has been rendered quaint in cases involving electronic storage. *See* Gov. Br. 16–48. It also asks this Court to adopt a sprawling new good-faith exception to the exclusionary rule that would make "the Amendment . . . a dead letter" in almost all cases.[1] *See id.* at 49–64. The Court should decline to perform this extreme makeover of the Fourth Amendment, and it should reverse the District Court's denial of Mr. Ganias's motion to suppress.

---

[1] *Wolf v. Colorado*, 338 U.S. 25, 47 (1949) (Rutledge, J., dissenting) ("[T]he Amendment without the sanction is a dead letter.").

-1-

I.   **The seizure and indefinite retention of Ganias's personal financial records violated the Fourth Amendment.**

    A.   **The overbroad seizure and retention of Ganias's personal files contravenes settled Fourth Amendment doctrine.**

Mr. Ganias and the government disagree about many issues, but on two key points there is common ground. First, the government does not deny that the imaging and retention of every file on Ganias's computers constituted a seizure of those files under the Fourth Amendment. Gov. Br. 17 n.7. Second, the government also concedes that the crucial records used to convict Ganias of tax evasion—his personal financial files—were seized outside the scope of the November 2003 warrant and then retained for two-and-half-years without judicial approval. Gov. Br. 17 n.7, 62 (Ganias's personal financial files not "responsive to the 2003 . . . warrant" and fell outside its "intended scope"). That ought to be the end of this case.

By seizing and retaining Ganias's personal files, the government engaged in precisely the behavior that the Fourth Amendment is supposed to render "impossible"—the seizure and indefinite retention "of one thing under a warrant describing another." *Stanford v. Texas*, 379 U.S. 476, 485–86 (1969) (quoting *Marron*, 275 U.S. at 196). In November of 2003, Army officials investigating allegations of procurement fraud by two of Ganias's accounting clients came to

-2-

Ganias's office with a particularized warrant for the seizure of "data . . . relating" to the "operations" of those two companies. SA27; *see* JA433. The agents nonetheless proceeded to "make mirror image" copies of every file on the computers and spent the next 13 months identifying the files within the warrant's scope. SA9–10, SA15–17. Then, once that process was complete, the agents decided to retain Mr. Ganias's personal financial records—which they *knew* to be outside the warrant's scope—for another 16 months "on the off-chance the information would become relevant to a subsequent criminal investigation." *United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014); *see* JA122 ("you never know what data you may need in the future"). If this is not an "unreasonable and . . . unconstitutional manner of executing" a warrant, nothing is. *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982).

> **B.** **The government's arguments do nothing to justify its over-seizure and indefinite retention.**

Notwithstanding the November 2003 warrant's limited scope, the government claims that it had a right to retain all of Ganias's electronic papers indefinitely, throughout the government's "evolving," multi-agency investigation. Gov. Br. 14, 29 (claiming a right to retain Ganias's non-responsive files until all "appeal[s] and collateral attack[s]" are exhausted, even though Ganias was never implicated in the alleged procurement fraud giving rise to the Army's warrant); *see*

-3-

*also* Gov. Panel Br. 30–31 (claiming a right to retain over-seized files "indefinitely and without temporal limitation"). The government offers no sound reason to invest federal agents with this new authority to effect long-term, "indiscriminate . . . seizures" of private records outside a warrant's scope. *Cf. Payton v. New York*, 445 U.S. 573, 583–84 (1979).

1.   **The government's extended defense of its initial off-site review of electronic evidence is beside the point.**

In an effort to justify its conduct, the government first offers a defense of what has become its standard practice when executing computer warrants: It images every file on an electronic storage device for later "off-site review" and identification of the files actually "subject to seizure." Gov. Br. 18, 17–22.

The government's general discussion of its off-site review practices is unresponsive to both Ganias's arguments in this appeal and the panel's original decision. The principal constitutional defect in this case is *not* the government's initial "creation of mirror images for offsite review." *Ganias*, 755 F.3d at 135 (deeming the initial imaging "constitutionally permissible"). It may well be that "on-site review" of digital files will often be "difficult or impractical," *see* Gov. Br. 19, and perhaps identifying electronic files within a warrant's scope will, as the government claims, sometimes "take weeks or months," *see id.* 20. This Court may therefore assume—as the panel did—that it was reasonable for the agents in

-4-

this case to image every file on Ganias's computers, and to spend almost a year locating the clearly labeled accounting records within the warrant's scope. *See* JA464 ("American Boiler's QuickBooks file is denoted 'american.qbw'; IPM's QuickBooks file is identified as 'industri.qbw'."). The Court may also assume, for the sake of argument, that reasonable law-enforcement officials needed 13 months to obtain the "proprietary software"—that is, QuickBooks and TurboTax—required "to access" the files at issue. Gov. Br. 7, 9, 18–22; SA15–16; *but see Amazon.com* (free shipping available for both TurboTax and QuickBooks software within a matter of days).[2] Even if all of these claims are true, they are beside the point.

Whatever difficulties or delays the agents may have encountered, there is no dispute that these agents *finished* identifying and segregating the files within the November 2003 warrant's scope about 10 ½ months after the initial seizure. SA15. By 13 months post-seizure, the agents had also secured all necessary software. SA16. Had the agents returned Ganias's personal financial records at that point, this might have been a borderline case. *Compare United States v. Gorrell*, 360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004) (10-month delay was "lengthy," but constitutional), *with United States v. Metter*, 860 F. Supp. 2d 205, 215

_____

[2] http://www.amazon.com/Intuit-Software/b?ie=UTF8&node=497488.

-5-

(E.D.N.Y. 2012) (15-month delay in beginning review and isolation of responsive files "blatant[ly]" unconstitutional). But instead, the agents decided to retain the non-responsive files indefinitely, on hope of future probable cause. *See* JA122. It was *this* decision—the decision to retain over-seized files *after* the responsive files had been located—that rendered the government's continuing extra-warrant seizure a "clear[]" violation of "Ganias's Fourth Amendment rights." *Ganias*, 755 F.3d at 137–38.

Indeed, the cases the government cites as support for off-site review of computer files, *see* Gov. Br. 19–22, themselves demonstrate that the government's indefinite retention in this case was unconstitutional. As the government points out, the practice of over-seizing for later off-site review was "first developed" in a series of cases from the Ninth, Tenth, and Eleventh Circuits "involving searches of voluminous paper documents." *Id*. 19 & n.8; *see Tamura*, 694 F.2d at 595–97; *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997); *United States v. Santarelli*, 778 F.2d 609, 616 (11th Cir. 1985). These decisions recognized that, when officials execute a warrant for particular papers, responsive files may sometimes be "so intermingled" with other documents "that they cannot feasibly be sorted on site." *E.g*., *Tamura*, 694 F.2d at 595–96. In these situations, an off-site review may be reasonable. But even then, the officials executing the warrant

-6-

must quickly complete their off-site search and return all "documents not described in the warrant." *See id.* at 596–97.[3]

Here, the government cites these cases to support its over-seizure, yet it completely ignores the critical limitations the cases impose. The government, however, must take the bitter with the sweet. If the government's agents wish to complete blanket seizures of "voluminous [electronic] documents" for later off-site review, *see* Gov. Br. 19 & n.8, then at the very least the agents must expeditiously complete their review and "promptly return[]" all files outside the warrant's scope. *See Santarelli*, 778 F.2d at 616.[4]

---

[3] *See also Hargus*, 128 F.3d at 1363 (disapproving of "wholesale seizure of file cabinets and miscellaneous papers and property not specified in the search warrant," but denying suppression because, unlike this case, "[n]o item not specified in the warrant was admitted against Mr. Hargus at trial"); *Santarelli*, 778 F.2d at 616 (agents "acted reasonably when they removed" intermingled paper records "to another location for subsequent examination . . . *so long as any items found not to be relevant were promptly returned*").

[4] The government claims that "Ganias and his *amici*" cite "decisions by magistrate judges" requiring return or destruction of over-seized records, while "failing to mention that those decisions have been largely overruled." Gov. Br. 38. That is simply untrue. Ganias's opening brief acknowledged that the practice of magistrate judges placing *ex ante* restrictions in warrants "is both controversial and uneven." Opening Br. 40–41. This makes it all the more urgent for Article III courts to continue their traditional role of reviewing the execution of warrants *ex post*. Opening Br. 41.

> **2.    The government's discussion of how "the 2003 warrant satisfied the particularity requirement" is also beside the point.**

In addition to discussing off-site review, the government also explains at length why, in its view, "the 2003 warrant satisfied the particularity requirement." Gov. Br. 22–28.  It is certainly true that the November 2003 warrant satisfied the particularity requirement, and at no point in this appeal has Ganias argued otherwise.

The November 2003 warrant was tailored to reach only those files that related to American Boiler and IPM.  Those are the only files the warrant identified, and those are the only files the government had probable cause to seize. *United States v. Galpin*, 720 F.3d 436, 446–47 (2d Cir. 2013); *see United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999) (a warrant to seize evidence stored on a computer must specify "which type of files are sought"); *United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041, *36 (S.D.N.Y. Apr. 4, 2007) ("when the government seeks to seize the information stored on a computer, . . . th[e] underlying information must be identified with particularity and its seizure independently supported by probable cause").  As the District Court's findings confirm, the November 2003 warrant was a narrow instrument that "limit[ed] the

-8-

. . . data authorized to be seized to that relating to the business, financial, and accounting operations of IPM and [American Boiler]." SA22, 27; JA433.

The parties have not challenged this finding on appeal. In fact, the government affirmatively recognizes that Ganias's personal files were not "responsive to the 2003 . . . warrant." *See* Gov. Br. 17 n.7, 62. The investigating agents, as well, also knew full well that the November 2003 warrant authorized the seizure of IPM and American Boiler files, while Ganias's own financial records "were not listed" in the warrant among the "items to be seized." JA336, 347–48.

It is, then, common ground that there was no particularity problem with the November 2003 warrant. Rather, the constitutional problem in this case was the agents' failure to abide by the warrant's express limits on the government's seizing authority. The agents in this case knew that Ganias's personal financial records were not among the "items to be seized" listed in the warrant. *Id.*; *see* JA122. They nonetheless elected to seize those files, along with every other record on the computers, and then retained the over-seized files indefinitely, even *after* the handful of files within the warrant's scope had been identified. *Id.*; *see* JA122. This continuing seizure and retention of files outside the "scope of the warrant[]"

-9-

violated the Fourth Amendment. *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976).[5]

> ### 3. The government's attempt to justify its over-seizure and indefinite retention under existing Fourth Amendment doctrine has no merit.

Settled Fourth Amendment doctrine compels the conclusion that the seizure and indefinite retention of electronic papers outside the November 2003 warrant's scope was unreasonable and unconstitutional. *Andresen*, 427 U.S. at 482; *Tamura*, 694 F.2d at 595–97. Nonetheless, the government's brief proceeds on the assumption that its over-seizure was in fact presumptively *reasonable*, and it contends that "demonstrating [the seizure's] unreasonableness" presents Ganias with "a 'laborious task.'" *See* Gov. Br. 18, 41 (quoting *Soldal v. Cook Cty.*, 506 U.S. 56, 71 (1992)). The government is mistaken.

As the Supreme Court recognized in *Soldal*, when officers seize a particular document or file "*acting pursuant to a court order*," a "showing of

---

[5] That the November 2003 warrant was narrow and particular does not mean, as the government would have it, that cases involving general warrants, "like *Stanford v. Texas*, 379 U.S. 476 (1965), [are] . . . irrelevant" in this appeal. Gov. Br. 25. The rule against general warrants is highly relevant. If this Court were to approve the government's indefinite retention beyond the scope of its warrant, the practical effect would be to convert "every warrant for electronic information [into] a general warrant, rendering the Fourth Amendment irrelevant." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176–77 (9th Cir. 2010).

unreasonableness" under the Fourth Amendment may well be "a laborious task." *See Soldal*, 506 U.S. at 71 (emphasis added). But there is a big difference between a seizure *pursuant to* a warrant or court order, *see id.*, and a seizure *outside a warrant's scope*. Where, as here, federal agents engage in the "seizure of one thing" (millions of files from Ganias's computers) "under a warrant describing another" (a handful of IPM and American Boiler files), the agents engage in conduct that the Fourth Amendment is supposed to render "impossible." *See Marron*, 275 U.S. at 196. That is why courts have recognized, over and over again, that overbroad, extra-warrant seizures of private papers violate the Fourth Amendment. *E.g.*, *Andresen*, 427 U.S. at 482 n.11 (as to seized "papers [that] were not within the scope of the warrants[,] . . . the State was correct in returning them voluntarily and the trial judge was correct in suppressing others"). It is also why this Court's own cases have repeatedly held that the seizure of "items outside the scope of a valid warrant" demands suppression of the over-seized items. *E.g., Matia*s, 836 F.2d at 747–48. The presumption of constitutionality that the government invokes, *see* Gov. Br. 18, 41, does not exist in this context.

Also unavailing is the government's remarkable suggestion that existing Fourth Amendment precedent authorizes retention of over-seized files—which the government had neither warrant nor probable cause to collect in the first place—

-11-

whenever those files are "need[ed] . . . for an ongoing investigation or prosecution." *See* Gov. Br. 28–29. Acceptance of this rule would effectively repeal the Fourth Amendment's Warrant Clause. The authority cited by the government does not remotely support the proposition.

In particular, nothing in *Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006), supports over-seizure of files beyond a warrant's scope throughout the pendency of "an ongoing investigation or prosecution." *See* Gov. Br. 28. *Krimstock* addressed the "seizure and continued impoundment" of a car pending the institution of criminal proceedings. *Id.* at 250–51. The Court recognized that an initial warrantless seizure of a car, supported by probable cause, is reasonable under the automobile exception to the warrant requirement. *Id.* at 250–52; *see Florida v. White*, 526 U.S. 559, 564 (1999) ("warrantless seizure of ... [a] car" permitted under the automobile exception). Nonetheless, the Court held that, as a matter of due process, "some immediate judicial review of the retention is required" pending the institution of a criminal case. *Krimstock*, 464 F.3d at 255. The opinion provides no support at all for the government's seizure and two-and-a-half year

-12-

retention of Ganias's personal financial records, outside the scope of a warrant and with no probable cause.[6]

Nor can the government take any refuge in child-pornography cases, where the computer hardware itself contains contraband. Gov. Br. 24–25, 36–37; *see, e.g.*, *United States v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000) (upholding seizure of entire computer as contraband in child pornography case); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997); *United States v. Johnston*, 789 F.3d 934, 941–43 (9th Cir. 2015). As the government explains in its internal guidance to its

---

[6] The other cases cited by the government on this point are also inapposite. Gov. Br. 28–29. In *United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013), all parties agreed that the government lawfully seized and retained a computer "by [obtaining] consent" from the defendant's husband. *Id.* at 1162, 1164. The government thus had the right to retain what all agreed was "lawfully seized property" until the termination of the criminal proceedings. *Id.* at 1167. Nothing in *Christie* permits the government to seize and indefinitely retain every file on a computer, without anyone's consent and beyond a warrant's scope.

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993), is even farther afield. There, the Ninth Circuit held that the government unconstitutionally seized private papers in "callous disregard [of] Ramsden's constitutional rights." *Id.* at 325. Nonetheless, in weighing the equities on Ramsden's motion for return of property, the court allowed the government to "review[] [and] copy[] the illegally seized documents" for the limited purpose of assisting "British [authorities]" in an investigation. *Id.* at 327. To the extent *Ramsden* has any relevance at all, it confirms that unbounded seizures of private papers "exhibit callous disregard for . . . constitutional rights." *Id.* at 325–27; *see also In re Application of Madison*, 687 F. Supp. 2d 103, 117–18 (E.D.N.Y. 2009) (denying relief under Rule 41(g), but "defer[ring] its ruling" as to whether the items at issue "were impermissibly seized").

-13-

prosecutors, a seized computer in a child-pornography case is a "container of contraband [that is] subject to forfeiture and will not be returned." Executive Office for U.S. Attorneys, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* 70–72, 95–96 (2009) ("DOJ Manual").[7] Here, by contrast, the files on Ganias's computers were evidence, not contraband, and the warrant authorized only the seizure of particular files relating to IPM and American Boiler. SA27; *see Carey*, 172 F.3d at 1275 (warrant to seize evidence stored on computer must specify "which type of files are sought"); DOJ Manual, *supra*, at 72 ("[i]n cases where the computer is merely a storage device for evidence," warrant must "focus on the relevant files"). Nothing in the warrant at issue here authorized the seizure and indefinite retention of *every* file on Ganias's computers.

        **4.**      **The government's purported authentication concerns and appeals to prosecutorial convenience provide no basis for permitting indefinite seizures of private papers outside a warrant's scope.**

If the files in this case had been traditional papers, it would be indisputable that the government's overbroad seizure and indefinite retention of Ganias's personal financial records "clearly violated [his] Fourth Amendment rights."

---

[7] http://www.justice.gov/criminal/cybercrime/docs/ssmanual2009.pdf.

-14-

*Ganias*, 755 F.3d at 137–38.  The fact that this case involves electronic files stored

on a computer, instead of traditional papers kept in a filing cabinet, does not alter

this conclusion.  In fact, it only strengthens the Fourth Amendment interests at

stake.  *Riley v. California*, 134 S. Ct. 2473, 2491 (2014) (electronic storage devices

"expose to the government far *more*" than even the contents of a house); *Ganias*,

755 F.3d at 135 ("If anything, even greater protection is warranted.").

      Notwithstanding these significant interests, the government asks this Court

to approve blanket over-seizure and indefinite retention of Ganias's electronic files

based on practical concerns about authenticating evidence and law-enforcement

convenience.  *See* Gov. Br.30–39.  This Court should reject these arguments.

> **a.**    **The government's desire to streamline its authentication of digital evidence provides no basis for permitting indefinite retention of documents outside of a warrant's scope.**

      As it did before the panel, the government once again claims that it should

be permitted to disregard the scope of its warrant and retain non-responsive files

indefinitely in order to authenticate responsive documents using "hash value[s]"

shared by the "original computer hard drive" and the "mirror image."  *See* Gov. Br.

30–32.  The government does not deny (because it cannot) that the "[t]he bar for

authentication" under the evidence rules is minimal.  *United States v. Vayner*, 769

F.3d 125, 130 (2d Cir. 2014).  Nor does it dispute that numerous other methods of

-15-

authentication are available, including testimony from government investigators establishing a chain of custody. *Id.*; *see Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 541–54 (D. Md. 2007).[8]

What the government does argue, though, is that using "hash values" would provide a somewhat more effective means of authenticating evidence, thereby helping prosecutors to more easily refute authentication challenges raised by defendants. Gov. Br. 30–31 (citing "defense claims of data tampering"). Even if that is true, it cannot possibly justify indefinite seizures outside the scope of warrants.

In cases involving paper records, as well, criminal defendants sometimes raise authentication challenges. Permitting indefinite retention of entire filing cabinets or drawers would undoubtedly be of assistance to the government in refuting those challenges. However, providing prosecutors with airtight responses to authentication challenges has never before been thought to constitute a sufficient reason for ignoring the terms of warrants. *Tamura*, 694 F.2d at 596–97 (rejecting government's claim that it had a right to retain intermingled "documents in their

---

[8] The government also chooses to ignore other cases—cited in the opening brief—which show that the government's own special agents regularly delete non-responsive files and do not appear to share the government's current litigating position on "evidentiary integrity." Opening Br. 44.

-16-

original master volumes in order to authenticate them at trial"). This Court should reject the government's invitation to do so now.[9]

That said, and as the panel opinion noted, the government's authentication concerns would at most permit the maintenance of a "complete copy of the hard drive solely to authenticate evidence responsive to the original warrant." *Ganias*, 755 F.3d at 139. Here, the government's expanded investigation into Ganias's personal income taxes had nothing to do with authentication concerns. As a result, those concerns provide no support for the government's "us[e] [of] the mirror image" in 2006 to conduct additional searches in aid of an unrelated criminal investigation.

>    **b.    A desire to improve the "usefulness of computer evidence" does not support blanket over-seizures outside the scope of warrants.**

The government also claims that seizing files outside the scope of computer warrants will improve the "usefulness of computer evidence," *see* Gov. Br. 32–34, but this proves far too much. Engaging in widespread over-seizure would improve

---

[9] The government's claim that indefinite over-seizures will provide "benefits to *defendants*" is equally unavailing. *See* Gov. Br. 31. The government may not seize and retain files beyond a warrant's scope based on the paternalistic notion that over-seizure is good for defendants. Many defendants would likely think that keeping the government's hands off their private papers is actually more important than access to a "forensically sound copy" of files seized beyond a warrant's scope. *Id.*

-17-

the "usefulness" of just about *any* evidence. Yet this justification has never provided a basis for seizing beyond a warrant's scope.

For example, the government notes that, by seizing and retaining every file on Ganias's computers, IRS agents were able to create a "VMware restoration" that allowed them to see "the forensic image in the way that the computer's owner would have viewed the information at the time of the seizure." Gov. Br. 34.; *see* JA319 ("I could sit there and look at what Steve Ganias was looking at at the time."); JA363 ("[E]verything in his computer. The [software] is like you're sitting at his terminal."). This was undoubtedly very "useful" for the government's agents. But the same considerations apply equally to over-seizures in the execution of warrants for paper files or other documents located inside an office or a house. If agents executing a warrant for particular files in an office could seize and retain the entire contents of that office, investigators would gain an excellent perspective on the "way [the office's owner] would have viewed the information at the time of the seizure." Gov. Br. 34.

Of course, it would be patently unconstitutional for officers executing a warrant authorizing the seizure of particular papers in an office to seize and retain

the entire office.  Such conduct is equally unconstitutional in cases involving

digital evidence.[10]

> **c.     The government did not need to over-seize and retain every file on Ganias's computers to comply with discovery obligations.**

The Court should also reject the government's incredible claim that, unless it

over-seizes and indefinitely retains every file on a computer, it may breach its

obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  Gov. Br. 34–35.  Once

again, the government's *Brady* obligations extend to all evidence, not just files

stored on a computer.  Yet the government cites no case, and there appears to be

none, that has ever adopted a *Brady* exception to the Fourth Amendment's warrant

requirement.

Indeed, engaging in blanket and indefinite seizures of non-responsive files

would, if anything, hinder the government's compliance with its *Brady* obligations.

As courts have recognized, "evidence that the government 'padded' an open file

with pointless or superfluous information to frustrate a defendant's review of the

file might raise serious . . . issues" under *Brady*.  *United States v. Warshak*, 631

---

[10] The government also claims that over-seizing and retaining every file on a computer helps protect against degradation of electronic files on DVDs.  *See* Gov. Br. 32.  But, if the government were required to abide by the terms of its warrant, nothing would stop it from creating a narrower backup limited to files actually within the warrant's scope.

F.3d 266, 297–98 (6th Cir. 2010).  Over-seizing non-responsive files for the purpose of producing them under *Brady* would vastly increase the volume of "pointless [and] superfluous" information produced to defendants.  The government's *Brady* obligations provide no support for its general, indefinite seizure beyond the scope of the November 2003 warrant.

### d.   The government's purported desire to conduct additional searches for responsive files cannot support its conduct in this case.

Nor can the government justify its over-seizure and indefinite retention by relying on its supposed need to "conduct reasonable searches of the images—for material responsive to the warrant—as the case evolve[d]."  Gov. Br. 35–36.

As an initial matter, accepting this logic would vastly expand the scope of the government's traditional seizing authority and would render the Fourth Amendment's particularity requirement virtually meaningless in computer cases.  Suppose, for example, that the government executed a warrant involving voluminous and intermingled documents in a home.  Clearly, the government would have no power to seize every paper in the home, retain all of the papers at the police station, and then search the papers for responsive files periodically over the course of five years.  Gov. Br. 35–36; *see Kremen v. United States*, 353 U.S. 346, 347 (1957) (seizure of entire contents of house unconstitutional).  Rather, the

-20-

government would be required to expeditiously complete its off-site search and to then return all "documents not described in the warrant." *See Tamura*, 694 F.2d at 596–97. Warrants for the seizure of particular files on computers should be governed by these same principles.

That said, even if it were reasonable for the government to seize and retain every file on a computer for the limited purpose of conducting periodic searches "for material responsive to [a] warrant," *see* Gov. Br. 35, such a rule would not justify the government's conduct in this case. Here, the agents who executed the November 2003 warrant *finished* identifying the files within its scope a little more than 10 months after the initial seizure. SA15–16. At no point did the agents go back to conduct additional searches for American Boiler and IPM data included within the November 2003 warrant's scope.

Moreover, the agents in this case knew full well that Ganias's personal QuickBooks file—"Steve_ga.qbw."—was *not* included in the "items to be seized" listed in the November 2003 warrant. JA336, JA347–48. As a result, the government's continued retention of that file could not possibly have been motivated by a desire to conduct additional searches "for material responsive to the [November 2003] warrant." Gov. Br. 35–36. The government simply continued to hold the file "on the off-chance the information would become relevant to a

-21-

subsequent criminal investigation." *See Ganias*, 755 F.3d at 137. That continued

retention was unreasonable and violated the Fourth Amendment.[11]

> **5.** **By the time of the April 2006 warrant, the unconstitutional seizure of Ganias's financial files was already complete.**

The government also claims that it acted reasonably when it "search[ed] the

retained forensic images" of Ganias's records pursuant to the April 2006 warrant.

Gov. Br. 43–48. By April 2006, however, the unconstitutional seizure of Ganias's

over-seized financial records was long since complete.

As the panel correctly noted, to hold that the April 2006 warrant "cured" the

government's prior unconstitutional seizure would "'reduce[] the Fourth

Amendment to a form of words." *Ganias*, 755 F.3d at 138 (quoting *Silverthorne

Lumber Co. v. United States*, 251 U.S. 385 (1920)). It would also directly conflict

with settled Supreme Court precedent.

---

[11] The government retreats from its prior claim that Ganias's "failure to file a Rule 41(g) motion amounts to [a] waiver of the right to file a motion to suppress." Gov. Br. 42. Instead, the government claims only that the availability of Rule 41(g) relief is a factor "that can be considered in weighing the reasonableness" of a seizure. *Id.* Either way, faulting Ganias for omission of a Rule 41(g) motion makes little sense here, given that "Ganias still had the original computer files," and, had Ganias filed the motion, the government would have claimed that "non-responsive files in its possession could not feasibly [be] returned or purged." *Ganias*, 755 F.3d at 140.

For example, in *United States v. Place,* 462 U.S. 696 (1983), officers seized the defendant's luggage on reasonable suspicion, continued holding the luggage during an unreasonably "prolonged 90-minute" delay, and eventually searched the luggage pursuant to a warrant. *Id*. at 699–700, 709–10. The Court held that the prolonged delay rendered the "seizure of respondent's luggage . . . unreasonable under the Fourth Amendment," which made the "evidence obtained from the subsequent search of [the] luggage inadmissible." *Id.* at 710. The fact that the officers had obtained a warrant to *search* the luggage did nothing to cure the earlier unconstitutional *seizure*. *See id.*

The same is true in this case. The government's seizure and indefinite retention of Ganias's personal financial files violated the Fourth Amendment. That unconstitutional seizure cannot be retroactively excused by a later warrant authorizing a search of the unlawfully seized files.

## II.     The unconstitutional seizure of Ganias's electronic files warrants suppression.

The government's seizure and indefinite retention of Ganias's financial records also demands exclusion of the illegally seized evidence. Under the settled precedent of both this Court and the Supreme Court, seizure and retention of "items outside the scope of a valid warrant" is unreasonable and requires

-23-

"suppression." *E.g., Matias*, 836 F.2d at 747–48.  The government's attempts to squeeze this case into a good-faith exception are unavailing and should be rejected.

### A.   The government cannot claim good-faith reliance on the November 2003 warrant.

In its brief, the government first claims that its agents "relied in good faith on the 2003 warrant."  Gov. Br. 53–54; *see generally United States v. Leon*, 468 U.S. 897 (1984).  The government misunderstands the scope of *Leon*'s good-faith exception.

As *Leon* itself explains, its rule admitting "evidence obtained in reasonable reliance on a subsequently invalidated warrant assumes, of course, that the officers *properly executed the warrant*."  *Leon*, 468 U.S. at 918 n.19 (emphasis added).  It is thus well-settled that "*Leon* does not apply if the execution of the warrant was improper." *United States v. Potts*, 586 F.3d 823, 832 (10th Cir. 2009).  Similarly, "*Leon* cannot be invoked in the prosecution's favor on such issues as whether . . . certain items not named in the warrant were properly seized."  *See* LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 1.3(f) (5th ed.).  For this reason, *Leon* has no effect on settled law imposing "suppression" as the "normal remedy" "when items outside the scope of a valid warrant are seized." *Matias*, 836 F.2d at 747.

-24-

In light of this established law, the government cannot qualify for a good-faith exception under *Leon*. As discussed above, the November 2003 warrant expressly limited "the data . . . to be seized" to files concerning the "operations of IPM and [American Boiler]." SA27; *see* JA433. The government nonetheless proceeded to seize every file on Ganias's computers and then retained them for two-and-a-half years. This continuing retention of non-responsive documents, after the responsive records were located, was "unconstitutional manner of executing the warrant." *Tamura*, 694 F.2d at 596–97. That sort of Fourth Amendment violation has never qualified for a good-faith exception under *Leon*. *Leon*, 468 U.S. at 918 n.19.

**B.    The government cannot avoid suppression by claiming reliance on precedent.**

**1.    The government effectively concedes that *Davis* does not apply.**

The government's conduct also cannot qualify for a good-faith exception based on "objectively reasonable reliance on binding appellate precedent." *See Davis v. United States*, 131 S. Ct. 2419, 2434 (2011). As this Court has held, *Davis*'s good-faith exception applies when a "precedent of this Circuit" or "the Supreme Court" authorized the government's conduct at the time of the violation. *See United States v. Aguiar*, 737 F.3d 251, 262 (2d Cir. 2013). Here, the

-25-

government concedes that "there was no directly governing Second Circuit precedent" authorizing the government's over-seizure and indefinite retention. Gov. Br. 58. *Davis* does not apply, and suppression is in order.

> **2.    Suppression is required even under an expanded good-faith exception.**

Without any binding precedent to support its conduct, the government seeks to transform *Davis* into a "license for law enforcement to forge ahead with new investigative methods in the face of uncertainty as to their constitutionality." *United States v. Sparks*, 711 F.3d 58, 67–68 (1st Cir. 2013). This Court should reject that contention. As explained in Mr. Ganias's opening brief, a new, uncertainty-based exception to the exclusionary rule would give "law enforcement . . . little incentive to err on the side of constitutional behavior." *Davis*, 131 S. Ct. at 2435 (Sotomayor, J., concurring in the judgment) (quoting *United States v. Johnson*, 457 U.S. 537, 561 (1982)). It would also gravely imperil the ability of the federal courts to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217 (1960).

That said, even under a much narrower version of the exclusionary rule—indeed, under almost any possible version of the exclusionary rule short of outright repeal—the government's conduct in this case demands suppression. The government's over-seizure and indefinite retention of Ganias's private records was

-26-

*contrary* to "precedent at the time of the search." *Ganias*, 755 F.3d at 140. By the time the government seized and retained every file on Ganias's computers, the rule barring the government from seizing private papers outside the scope of a warrant was well-established. *E.g.*, *Andresen*, 427 U.S. at 482 n.11. In addition, the cases approving off-site review of voluminous, inter-mingled records recognized that continuing to retain non-responsive files "after locating the relevant documents" amounted to "an unreasonable and . . . unconstitutional manner of executing [a] warrant." *Tamura*, 694 F.2d at 597; *cf. Santarelli*, 778 F.2d at 615–16. These clear precedents should have put the government on notice that over-seizure and indefinite retention of Ganias's files—after having already identified the responsive records—violated the Fourth Amendment.

In the face of this established precedent, the government nonetheless claims that its conduct complied with "then-prevailing appellate case law." Gov. Br. 54. But two of the cases that make up this supposedly "prevailing" law are wildly inapposite. *See Krimstock*, 464 F.3d at 250–255 (initial seizure of car, on probable cause, was proper, but due process demands "some immediate judicial review of the retention" pending institution of a criminal case); *Ramsden*, 2 F.3d at 325–27 (seizure of private papers was unconstitutional and in "callous disregard [of] Ramsden's constitutional rights," but equitable balancing under Rule 41(g) favored

-27-

retention of "illegally seized documents" for the limited purpose of assisting

"British [authorities]").  And the third is a pre-*Tamura* Ninth Circuit decision that

the *Tamura* court essentially limited to its facts.  *United States v. Beusch*, 596 F.2d

871 (9th Cir. 1979); *see Tamura*, 694 F.2d at 595 n.2 (*Beusch* permits retention of

only non-separable information found in the "same physical volume, book, or file,"

not "sets of ledgers or files").  These cases hardly represent "prevailing" law, and

they provide no support for the government's indefinite retention of every file on

Ganias's computers.[12]  The government cannot establish any reasonable reliance

on precedent.

### C.   The April 2006 warrant does nothing to cure the government's unconstitutional seizure.

In a claim raised for the first time on rehearing, the government now

contends that it also relied in good-faith on the April 2006 warrant.  *See* Gov. Br.

59–62.  This claim, too, is without merit.

---

[12] The government also cites the District Court opinion in *United States v. Triumph Capital Group*, 211 F.R.D. 31 (D. Conn. 2002). Gov. Br. 33.  That decision obviously did not establish any precedent for future cases. *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987) ("a district court decision does not 'clearly establish' the law" and "district judges within a particular circuit . . . remain free to disagree").  In any event, *Triumph Capital* addressed whether the government had engaged in the sort of "extraordinary" and exceptional misconduct that would "justif[y] blanket suppression" of all files, even those within a warrant's scope. *Triumph Capital*, 211 F.R.D. at 61. Nothing in the opinion authorized the seizure and indefinite retention of computer files outside a warrant's scope.

-28-

As courts have recognized, "[w]hen an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant." *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012); *see Place*, 462 U.S. at 700, 710; *United States v. Scales*, 903 F.2d 765, 767–68 (10th Cir.1990) ("the search of the suitcase after the search warrant was issued does not prevent" suppression based on earlier unlawful "seiz[ure] [of] the luggage"). If the rule were otherwise, there would never be any effective remedy for a general, indefinite seizure on hope of future probable cause. In every case, the police could avoid suppression simply by obtaining a "warrant before they searched." *Burgord*, 675 F.3d at 1035.

This Court, *en banc*, should make this rule explicit: When law-enforcement officials commit an unconstitutional seizure, a later warrant to search the unconstitutionally seized evidence provides no basis for avoiding suppression. *Id.*; *see Place*, 462 U.S. at 700, 710.[13] But even under a straightforward application of this Court's existing precedents, the good-faith exception still does not apply here. In *United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996), this Court held that, in

---

[13] *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), is distinguishable because it involved an unlawful predicate *search*, whereas this case concerns an unlawful predicate *seizure*.

-29-

order for a subsequent warrant to purge the taint of an earlier unconstitutional search, the official seeking the warrant must, at the very least, provide full disclosure of "the details of [the] dubious pre-warrant conduct," so that the issuing magistrate can make an informed assessment of the predicate conduct's legality. *Id.* at 1280–82.

Here, the application for the April 2006 warrant plainly failed to satisfy this standard. The application omitted the essential facts on which the unconstitutionality of the government's seizure turned. The application never mentioned that Ganias's personal financial records were not among the items authorized to be *seized* under the November 2003 warrant. *See* JA457–72 (stating only that the files could not be "viewed"). The application also failed to state the key fact that the government had finished identifying the files within the warrant's scope *16 months earlier*, and yet had continued to hold all of the files outside the warrant's scope. *Id.* Agent Hosney was well aware of all of this information. JA336, 347–48 (testimony at suppression hearing). Her convenient omission of these critical facts bars any claim that the April 2006 warrant launders the government's earlier unconstitutional seizure.

The government's only response to *Reilly* is to distinguish it on its facts. Gov. Br. 60–61. According to the government, the unconstitutional search in *Reilly*

-30-

was egregious, while the government's conduct in this case was "scrupulous." Gov. Br. 61. Every case has its facts, to be sure, but there was nothing at all "scrupulous" about the government's conduct in this case. As the panel recognized, the agents in this case "clearly violated Ganias's Fourth Amendment rights," and their blanket and indefinite seizure precludes any claim of "good faith." *Ganias*, 755 F.3d at 137–38. The government's failure to disclose the material details of the egregious unconstitutional seizure that took place here precludes any claim of reasonable reliance on the April 2006 warrant.

## <u>CONCLUSION</u>

The Court should reverse the order denying Ganias's motion to suppress, vacate his conviction, and remand for further proceedings.

Respectfully submitted,

DEFENDANT-APPELLANT,
STAVROS M. GANIAS


Stanley A. Twardy, Jr.
Day Pitney LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
(203) 977 7300

Daniel E. Wenner
John W. Cerreta
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103
(860) 275-0100

Counsel for the Defendant-Appellant

September 11, 2015

-32-

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,996 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>/s/ John W. Cerreta</u>
John W. Cerreta

-33-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e–mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's NextGen CM/ECF System.


    /s/ John W. Cerreta
John W. Cerreta

-34-